UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| KENNETH R. DAVIN,<br><br>*Plaintiff*,<br><br>v.<br><br>RESOLUTION MANAGEMENT<br>CONSULTANTS, INC.,<br>AND JEFFREY B. KOZEK,<br>INDIVIDUALLY,<br>AND JERRY L. THIBODEAU,<br>INDIVIDUALLY,<br><br>*Defendants*. | Civil Action No.: 3:20-cv-514 |

## COMPLAINT and JURY DEMAND

Plaintiff, Kenneth R. Davin, files his Complaint against Defendants, Resolution Management Consultants, Inc., Jeffrey B. Kozek, and Jerry L. Thibodeau (collectively "Defendants"), and his causes of action would show the Court as follows:

### PARTIES

1. Plaintiff Kenneth R. Davin is a citizen and resident of Knox County, Tennessee. Mr. Mr. Davin owns and operates Design One Building Systems, Inc. ("DOBS"), and America One Companies, Inc. ("AOC"), both of which are Tennessee corporations, with principal offices located in Knoxville, Tennessee. Mr. Davin is the assignee of any and all rights DOBS and AOC may have to recover from Defendants. All references to Mr. Davin herein include DOBS and AOC.

2. Defendant Resolution Management Consultants, Inc. ("RMC") is a New Jersey corporation that may be served with process in the care of its registered agent, Jeffrey B.

1

Kozek, at 5 Greentree Centre, Suite 311, 525 Route 73, North Marlton, New Jersey 08053.

3. Defendant Jeffrey B. Kozek, the President of RMC, is a citizen and resident of Medford, New Jersey, and may be served with process at 5 Greentree Centre, Suite 311, 525 Route 73, North Marlton, New Jersey 08053.

4. Defendant Jerry L. Thibodeau, an employee of RMC, is a citizen and resident of Marlton, New Jersey, and may be served with process at 5 Greentree Centre, Suite 311, 525 Route 73, North Marlton, New Jersey 08053.

## JURISDICTION

5. Under 28 U.S.C. § 1332(a), diversity jurisdiction exists when a civil action is between citizens of different states and the amount in controversy meets or exceeds $75,000.00.

6. Mr. Davin is a citizen and resident of the State of Tennessee, as are DOBS and AOC.

7. RMC is a corporation formed under the laws of the state of New Jersey with its principal place of business in New Jersey.

8. Mr. Kozek and Mr. Thibodeau are citizens of the State of New Jersey.

9. As a result of the foregoing facts, there is complete diversity of citizenship between the parties as defined by 28 U.S.C. §1332(a)(l).

10. The amount in controversy exceeds the jurisdictional minimum.

## FACTS

11. Mr. Davin, DOBS, and AOC filed claims against the United States Veterans Administration associated with construction work performed in connection with the Veterans Administration Knoxville Outpatient Facility, located in Knoxville, Tennessee ("Veterans Administration Litigation").

12. In or around July 2013, Mr. Davin's representative contacted RMC to serve as a construction consultant on behalf of Mr. Davin and his companies in the Veterans Administration Litigation.

13. RMC came to Knoxville to see the project and pitch its claims consulting services to Mr. Davin.

14. On or about December 16, 2013, Mr. Davin, through his representative, received a written proposal ("Proposal") and a retainer letter ("December 2013 Retainer Letter") from RMC, signed by Jeffrey B. Kozek (attached as Exhibit A and B, respectively).

15. The Proposal provides the following: "[t]he personnel proposed for the Phase 1 effort are Jeffrey B. Kozek (Principal), Mark D. Steele (Senior Managing Consultant), and Lou Norella (Consultant). The estimated fee for this initial work is $24,000.00, with a majority of the initial effort being performed by Mark." *See* Exhibit A.

16. The Proposal further provides: "[a] budget and schedule for Phase 2 will be developed and agreed as a result of the Phase 1 efforts and prior to the start of Phase 2." *See* Exhibit A.

17. RMC's Standard Rate Schedule and Terms was included as an attachment to the December 2013 Retainer Letter (attached as Exhibit C).

18. The Standard Rate Schedule and Terms provides that Defendants "shall exercise that degree of care and skill normally expected of persons performing similar functions." *See* Exhibit C.

19. On behalf of DOBS, Mr. Davin signed the December 2013 Retainer Letter on December 18, 2013. *See* Exhibit B.

20. As noted in the Proposal, Mr. Steele was to complete the majority of the work associated with Phase 1; however, shortly after Mr. Davin signed the December 2013 Retainer Letter, Mr. Steele left RMC. As such, Mr. Steele did not perform the specified work, and no other RMC employee correctly performed the work.

21. On or about February 24, 2014, Mr. Davin, through his representative, received a letter ("Phase 1 Letter") from RMC that indicated that Phase 1, as detailed in the Proposal, was complete (attached as Exhibit D).

22. The Phase 1 Letter, signed by Jerry L. Thibodeau, provides a budget for Phase 2 in the amount of $164,393.00. *See* Exhibit D.

23. The Phase 1 Letter also contained a second retainer letter ("February 2014 Retainer Letter"), which provided the following: "a retainer in the amount of $25,000 is required and will be applied against the final invoice." *See* Exhibit E.

24. Mr. Davin never signed the February 2014 Retainer Letter. *See* Exhibit E.

25. On or about April 29, 2014, Defendants sent Mr. Davin's representative an updated retainer letter ("April 2014 Retainer Letter") via email. *See* Exhibit F.

26. The April 2014 Retainer Letter provided the following: "[t]he specific services to be rendered are addressed in our proposal dated February 24, 2014." *See* Exhibit F. The April 2014 Retainer Letter did not require a retainer fee. *Id*.

27. RMC's Standard Rate Schedule and Terms was included as an attachment to the April 2014 Retainer Letter. *See* Exhibit G.

28. The Standard Rate Schedule and Terms provides that Defendants "shall exercise that degree of care and skill normally expected of persons performing similar functions." *See* Exhibit G.

29. Mr. Davin signed the April 2014 Retainer Letter on behalf of himself, DOBS, and AOC on May 2, 2014. *See* Exhibit F.

30. As noted above and referenced in Exhibit D, Defendants were to perform services at the agreed-upon budgeted amount of $164,393.00; however, Defendants increased the budget without approval from Mr. Davin, DOBS or AOC.

31. In reference to the Phase 1 Letter and the April 2014 Retainer Letter, Defendants billed Mr. Davin and received payment for the following invoices:

    a. $52,517.10 on May 31, 2014;

    b. $92,945.41 on June 30, 2014;

    c. $69,567.70 on July 31, 2014;

    d. $34,753.38 on August 24, 2014;

    e. $12,637.10 on September 30, 2014;

    f. $4,425.00 on October 31, 2014;

    g. $23,111.83 on April 30, 2014;

    h. $13,861.15 on July 31, 2015;

    i. $15,589.75 on August 31, 2015;

    j. $187.50 on September 30, 2015;

    k. $30,410.80 on June 30, 2016; and

    l. $52,598.85 on July 31, 2016 (*see* Exhibit H for RMC's Billing Summary).

32. The above-referenced invoices total $402,605.57, all of which were paid, and far exceeds $164,393.00, which was the agreed-upon budget per the Phase 1 Letter and the April 2014 Retainer Letter. *See* Exhibit D and F.

33. Defendants continued to bill Mr. Davin for the following:

   m. $12,576.50 on August 31, 2016;

   n. $38,334.15 on March 31, 2017;

   o. $1,943.10 on April 30, 2017;

   p. $2,970.65 on June 30, 2017;

   q. $26,500.00 on July 31, 2017;

   r. $2,568.75 on August 31, 2017;

   s. $3,236.25 on September 30, 2017;

   t. $273.75 on October 31, 2017;

   u. $8,950.00 on December 31, 2017;

   v. $13,740.90 on January 31, 2018;

   w. $18,464.10 on February 28, 2018;

   x. $22,731.95 on March 31, 2018;

   y. $28,392.40 on April 30, 2018; and

   z. $15,368.25 on May 31, 2018 (*see* Exhibit H).

34. The above-referenced invoices total $196,050.75, of which Mr. Davin paid $22,990.35. *See* Exhibit H.

35. Defendants wrongfully threatened to quit and demanded payment above the agreed-upon cost before appearing in court or performing other related services and often withheld necessary reports and other documentation to force payment from Mr. Davin.

36. Defendants provided flawed and accurate expert reports and refused to make corrections when errors were noted, which resulted in the reduction in Mr. Davin's claims in the Veterans Administration Litigation.

37. Although the services provided by Defendants were in breach of their contract and below the quality required to be usable at trial, Mr. Davin was without sufficient time to seek a new claims expert and was required to pay the invoices to maintain Defendants as his claim expert for the Veterans Administration Litigation.

38. Overall, Mr. Davin was billed for incomplete and incorrect expert reports, amounting to nearly $600,000.00, of which Mr. Davin paid approximately $425,595.92.  *See* Exhibit H.

39. Because the work performed by RMC was deemed deficient to the point where Mr. Davin's lawyers felt they could not use RMC at a trial of the matter.

40. The quality of Defendants' work was sufficiently poor that Mr. Davin's attorneys could not use Defendants or their work product in attempting to mediate and settle the case shortly before trial.

41. Because of Defendants's breaches, actions, and omissions, as alleged herein, Mr. Davin was forced to settle his claims against the United States Veterans Administration, resulting in the loss of millions of dollars.

## COUNT I
## BREACH OF CONTRACT

42. Mr. Davin incorporates each of the numbered paragraphs above as though set forth herein verbatim.

43. The parties entered into a valid and enforceable contract on or about May 2, 2014, for the performance of Phase 2 litigation support services by Defendants.  *See* Exhibit F.

44. Defendants breached the contract between the parties by failing to exercise the degree of care and skill expected of persons performing similar functions.

45. Defendants breached the contract by failing to produce complete and accurate expert reports, in addition to allowing unqualified employees to perform the agreed-upon services, resulting in unusable expert reports.

46. Defendants further breached the contract by billing for services at an increased rate without the parties' consent to the contract.

47. Mr. Davin has suffered and will continue to suffer monetary damages due to Defendants' breaches of contract.

48. Mr. Davin has incurred and continues to incur attorney fees due to Defendants' breaches of contract.

## COUNT II
## NEGLIGENCE

49. Mr. Davin incorporates each of the numbered paragraphs above as though set forth herein verbatim.

50. Defendants agreed to "exercise that degree of care and skill normally expected of persons performing similar functions." *See* Exhibit G.

51. Defendants owed a duty of reasonable care in their performance of litigation support services on behalf of Mr. Davin.

52. Defendants breached that duty by failing to completely and accurately provide expert reports, allowing unqualified employees to perform litigation support services, and billing over and above the agreed-upon budget noted in the contract. *See* Exhibit D.

53. As a direct and proximate cause of Defendants' negligence, Mr. Davin has suffered and will continue to suffer monetary damages.

## COUNT III
## FRAUDULENT MISREPRESENTATION

54. Mr. Davin incorporates each of the numbered paragraphs above as though set forth herein verbatim.

55. Defendants made false representations regarding their ability to perform litigation support services as agreed upon in the contract, with the intent and expectation that Mr. Davin would rely upon those representations in making decisions about hiring Defendants and about his claims with the Veterans Administration.

56. Defendants further misrepresented the costs associated with their litigation support services, with the intent and expectation that Mr. Davin would rely upon those representations in making decisions about hiring Defendants and about his claims with the Veterans Administration.

57. Defendants knew or should have known the representations were false when they were made, as Defendants were or should have been aware of their inability to perform their obligations under the contract.

58. Defendants knew or should have known the appropriate costs associated with their services, as Defendants provided a detailed budget with a much lower cost than what Defendants charged Mr. Davin. *See* Exhibit D.

59. Defendants intended for Mr. Davin to rely on the false representations, so that Defendants could secure the contract, and thus, acquire funds from Mr. Davin, knowing that Mr. Davin would not have the time or ability to replace Defendants later in the litigation and could effectively be "held up" for fees in excess of the purported estimate.

60. Mr. Davin justifiably relied on the false representations of Defendants, as Mr. Davin was reassured of Defendants' expertise in the area of litigation support services, and more specifically, the area of construction claims.

61. Mr. Davin has sustained and will continue to sustain monetary loss as a result of Defendants' false representations.

## COUNT IV
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

62. Mr. Davin incorporates each of the numbered paragraphs above as though set forth herein verbatim.

63. Mr. Davin is a "consumer" pursuant to Tennessee Code Annotated § 47-18-103(3).

64. The contract memorializes a "consumer transaction" pursuant to Tennessee Code Annotated § 47-18-103(20).

65. The Tennessee Consumer Protection Act ("TCPA") makes unlawful: "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."  Tenn. Code Ann. § 47-18-104(7).

66. The TCPA also makes unlawful: "[r]epresenting that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve or which are prohibited by law."  Tenn. Code Ann. § 47-18-104(12).

67. Defendants made a series of false representations which Mr. Davin relied upon and as a result, suffered harm.

68. Defendants fraudulently induced Mr. Davin into contracting for services by making false claims in regard to Defendants' ability to complete the work professionally.

69. Defendants also made false claims regarding the cost of the work, as Mr. Davin was charged above the agreed-upon budget detailed in the Phase 1 Letter and the April 2014 Retainer Letter. *See* Exhibit D and F.

70. Mr. Davin has sustained and will continue to sustain monetary loss as a result of Defendants' false representations.

71. Mr. Davin is entitled to receive treble damages from Defendants pursuant to Tenn. Code Ann. §47-18-109(a)(3).

72. Mr. Davin is entitled to receive attorney's fees from Defendants pursuant to Tenn. Code Ann. §47-18-109(e)(1).

## JURY DEMAND

Plaintiff demands a jury trial on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Davin prays for relief as follows:

1. That judgment be entered for Mr. Davin and against Defendants;

2. That the contract between Mr. Davin and Defendants be rescinded, with all funds paid to Defendants returned to Mr. Davin;

3. That Mr. Davin be awarded all damages caused by Defendants' breaches, in an amount to be determined by a jury, and that such damages be trebled under the TCPA;

4. That Mr. Davin be awarded punitive damages in an amount equal to three times his actual damages, sufficient to deter similar activity in the future;

5. That Mr. Davin be awarded his reasonable attorney's fees and expenses incurred due to Defendants' breach of contract, negligence, false representations, and violations of the TCPA;

6. That Mr. Davin be awarded the recovery of any costs associated with the filing, pursuit and/or other actions associated with this matter; and

7. That Mr. Davin be awarded any other and general relief to which he is entitled as may be ordered by this Court.

/s/ Gregory Brown
Gregory Brown (BPR No. 027944)
Christopher C. Field (BPR No. 028070)
LOWE YEAGER & BROWN PLLC
900 S. Gay Street, Suite 2102
Knoxville, Tennessee 37902
Tel: (865) 312-8745
Fax: (865) 637-0540
gb@lyblaw.net
ccf@lyblaw.net
*Attorneys for Plaintiff Mr. Davin*